MARY E. HEER, petitioner,

*v.*

HENRY HEER.

[Submitted March 7th, 1907.   Decided March 8th, 1907.]

1. Evidence in a suit for divorce considered, and *held* sufficient to show a *bona fide* residence in the state by petitioner.

2. Evidence in a suit for divorce *held* sufficient to show desertion by husband.

On petition for divorce.   On exceptions to master's report.

*Messrs. Potts & Higgins,* for the exceptants.

BERGEN, V. C.

The report of the special master is adverse to the application of the petitioner for a divorce from the defendant upon the ground of desertion.   The master reports that there is not "sufficient legal proof of the petitioner's *bona fides* in acquiring a residence in this state, nor is there sufficient proof of her *animus manendi,*" and also that there is not sufficient proof as to the causes of the desertion, to which report the petitioner has filed exceptions.

The petitioner testifies that she and the defendant were married in 1891; that they lived together as husband and wife until the 16th day of March, 1903, when the defendant left her in their residence on Eighth street in New York City, where they had been living for eleven years, since which time he has not returned to her, nor contributed to her support; that immediately after the marriage petitioner returned to her father's home at 367 Eighth street, New York City, where she resided separate from her husband until the month of October, in the year 1892, when her husband rented rooms on Eighth street in

which they lived until the husband left, shortly after which she went to live with her sister in West Hoboken, New Jersey, spending part of the time with her sister and part of the time at her home in New York City, waiting before making up her mind what to do until her father, who was then a resident of West Hoboken, should return from Utica, where he was temporarily employed as a constructing engineer; that upon her father's return, which was about the 1st of June, 1903, he paid the rent for the rooms which she had occupied in New York City, and advised her to remove to West Hoboken, where he rented rooms for her near where her three sisters and brother lived, since which time she has continuously lived in West Hoboken in the rooms rented for her by her father; that the house which her father rented for her is at No. 925 Hoboken street, West Hoboken, and that her father lives with her part of the time and the other part of the time with her sister. She further testified that she did not remove to New Jersey with any idea of getting a divorce, and knew nothing about the divorce laws when she came here, but removed to New Jersey because she wanted to be where her father and sisters were; that she has one child, a son thirteen years of age, who lives with her. The father testified that when the defendant left the petitioner he was superintending the construction of a land digging machine for the Hayward Company in Utica; that he returned home about the 1st of June, 1903, and found his daughter, the petitioner, at her house on Eighth street; that he at once gave her $100 to pay a mortgage on her furniture and

"told her to move her things over to New Jersey, where my other daughters live, and that I would hire a house for her and make my home with her there. She consented to this, and the very next day or two days afterwards she moved her things over to West Hoboken, New Jersey, to the place where we are now living. I think this was in June that she moved to New Jersey, and she has lived in New Jersey ever since that time. I had lived in New Jersey before this time with one of my other daughters. I have lived in New Jersey now for about four years. I know that I have voted three times here. I make my home first with one daughter and then with the other, except when I am away on business."

The petitioner removed to New Jersey about the 1st of June, 1903, and filed her petition in this cause September 29th, 1905,

nearly four months after the statutory period of two years had elapsed. The master relies upon *Hunter* v. *Hunter, 64 N. J. Eq. (19 Dick.) 277,* as supporting his conclusion. But I am of opinion that the case referred to is not applicable to the facts presented in this cause. In the *Hunter Case* the petitioner remained a resident of New York for two years and a half after the separation, and filed her petition within two weeks after the expiration of the statutory period, which the court held was not sufficient to justify the inference that she had maintained such a residence in New Jersey as is necessary under our statute to give the court of chancery jurisdiction of her matrimonial status, and that her testimony, even if it had been more ample, would have required corroboration. In the case we are considering the petitioner removed to New Jersey very shortly after her husband left her, and it was natural that she should do so, her father and three sisters and her brother all living in West Hoboken. She was left alone in New York City, but took no step towards obtaining a residence in New Jersey until she had consulted her father, and acting on his advice she removed to this state in order to be near her sisters and where her father could live with her part of the time. Her testimony on this subject is corroborated by the father, and there is nothing in this evidence to justify the inference that the residence thus created was intended to be transient, or was established for the purpose of obtaining the benefit of a more liberal divorce law than existed in the foreign jurisdiction from which she removed. I am entirely satisfied from this evidence that the petitioner came to this state to make her residence near her relatives, and where her father might conveniently look after her interests, and the evidence on this point given by the petitioner and corroborated by the father does not, as was said by the court of errors and appeals in *Tracy* v. *Tracy, 62 N. J. Eq. (17 Dick.) 807,* "bear any intrinsic evidence of improbability," and, in my judgment, it is sufficient to establish the residence of the petitioner to be in this state.

On the question of the corroboration of the petitioner as to the causes of the desertion, I am of the opinion that she has made out her case. She testifies that for some time before her husband

left he was cruel and abusive; that he often said to her "you will not live until morning," and that "I will put a pill in the boy's mouth and will turn the gas on," and that she was so afraid of him that she had to watch him all the time. The father testifies that he had lived with the petitioner and the defendant in New York, but left about a year before the desertion; that the defendant had been arrested and sent to prison while he was living there, and after he was released he used such vulgar language and quarreled so about the house that he could not stand it and left them, and that he acted as if he did not care anything for his wife and child, from which we are justified in inferring that the defendant had lost all affection for his wife and child, and indicates a disposition towards them which would lead him to act as he did. The testimony of the wife shows that her husband had ceased to care for her and her child, a sufficient explanation of the reason why he left her as he did on the anniversary of their wedding with the remark, "I will say good-bye, and that is what I will give you for your wedding anniversary." There was no justifiable cause for his leaving his wife, but the cause which actuated the defendant, according to the testimony, was his loss of affection for his family and an indisposition to be further burdened with them. In this the wife is corroborated by the testimony of her father, not only as to his cruelty to his wife, but as to his determination to be rid of contributing towards their support, for petitioner's father met the defendant in Hoboken, New Jersey, in the month of August following the time when he deserted his wife, and defendant then told the father that he had just come back from Canada, and when the father said to him, "what is the matter you don't go home and take care of your wife and child," he replied, "I have got enough to do to take care of myself, and I don't want to have anything to do with them," and in further corroboration of the petitioner on this point is the testimony of her solicitor, which is, that after he had written a letter to a woman supposed to be acquainted with the defendant, the defendant called at his office in Jersey City, and when the solicitor said that his wife wanted some support from him, he replied that he would not support her and that "he

didn't care to have anything to do with her, and she could do as she pleased."

In *Alward* v. *Alward, 65 N. J. Eq. (20 Dick.) 28,* the husband left his wife at the place of her residence as if to go to work and did not indicate by any word or act that he did not intend to return, and he was never heard of afterwards, upon proof made to the chancellor, that a search was made by the friends of both parties, which was conducted and persisted in in good faith for a reasonable time, the court held that the evidence justified the inference that the defendant was alive, and the case showing that the defendant was last seen in a locality in this state not far from his residence, in his ordinary condition of health, the further inference was justified that he was free and able to return to his wife if he desired to do so, and that his conduct and unexplained absence thereafter brought the case within the doctrine laid down in *Sergent* v. *Sergent, 33 N. J. Eq. (6 Stew.) 204,* to the effect that a husband, who had left his wife without any word or act indicating intent to desert her, was shown to have entertained that intent, by proof that he was alive and able to return to her if he chose, but that he had continuously remained away from her. In the case we are considering the defendant was seen in West Hoboken not far from where his wife lived where he had a conversation with her father in which he declined to go to her, or render her any assistance, and if he had any doubt about her place of residence he could easily have ascertained it by asking her father.

The desertion is abundantly proven, and the petitioner is entitled to a decree. It therefore follows that the exceptions must be sustained.